UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARGIE M. GRUBBS,

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

18-CV-6050

Decision & Order

On January 18, 2018, the plaintiff, Margie Grubbs, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On September 27, 2018, Grubbs moved for judgment on the pleadings, Docket Item 11, and on January 24, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16.

For the reasons stated below, this Court grants Grubb's motion, in part, and denies the Commissioner's cross-motion.

## BACKGROUND

I.      PROCEDURAL HISTORY

On February 4, 2014, Grubbs applied for Supplemental Security Income benefits ("SSI").  Docket Item 8 at 17.  She claimed that she had been disabled since February 25, 2013, due to an injury to her right leg and degenerative facet joint disease.[1]  *Id.*

On June 16, 2014, Grubbs received notice that her application was denied because she was not disabled under the Act.  *Id.* at 83.  She requested a hearing before an administrative law judge ("ALJ"), *id.* at 99, which was held on June 21, 2016, *id.* at 17.  The ALJ then issued a decision on July 13, 2016, confirming the finding that Grubbs was not disabled.  *Id.*  Grubbs appealed the ALJ's decision, but her appeal was denied, and the decision then became final.  *Id.* at 5.

II.     RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Grubbs's objection.  Grubbs was examined by several different providers but only two—James Fennelly, M.D., and William J. Kingston, M.D.—are most significant to her claim of disability.

    A.      **James Fennelly, M.D.**

James Fennelly, M.D., is a family doctor who treated Grubbs several times after her alleged disability onset date.  *See* Docket Item 8 at 24.   For example, Dr. Fennelly

---

[1] Facet joint disease is a spinal condition that occurs when the facet joints in the spine degenerate to the point of causing painful symptoms.  *See Facet Disease*, ATL. BRAIN & SPINE, https://www.brainspinesurgery.com/facet-disease/.  (last visited Mar. 18, 2019).

2

examined Grubbs on October 2, 2013, and October 9, 2013, and completed a progress report for the New York's Workers' Compensation Board in which he diagnosed joint pain in her lower leg and a skin sensation disturbance.  *Id.* at 306, 311.  Dr. Fennelly saw Grubbs on December 18, 2015; December 30, 2015; and February 10, 2016, as well.  *Id.* at 621-25.  At least as early as December 30, 2015, Dr. Fennelly assessed Grubbs as having fibromyalgia.  *Id.* at 622.  On June 3, 2016, Dr. Fennelly completed a medical source opinion questionnaire in which he opined that Grubbs would be "constantly" off-task at work, would miss work more than four work days per month, and had significant limitations with regard to sitting, standing, and walking.  *Id.* at 628-29.  He attributed these limitations to "right leg pain and fibromyalgia pain."  *Id.* at 629.

### B.     William Kingston, M.D.

William Kingston, M.D., is a neurologist who saw Grubbs on several occasions, beginning in 2013.  *Id.* at 354, 314.  On May 14, 2015, and again on December 16, 2015, Dr. Kingston listed fibromyalgia as his primary assessment in the progress notes he wrote after treating Grubbs.  *Id.* at 630-33.  Earlier, on February 11, 2015, Dr. Kingston had noted that Grubbs "may have fibromyalgia."  *Id.* at 635.

## III.    THE ALJ'S DECISION

In denying Grubbs's application, the ALJ evaluated her claim under the Social Security Administration's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.  § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

3

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative

4

substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ determined at step one that Grubbs had not engaged in substantial gainful activity since her alleged disability onset date. Docket Item 8 at 19. At step two, the ALJ found that Grubbs had severe impairments, including minimal degenerative disc disease of the lumbar spine, right patellar tendinitis, reflex sympathetic dystrophy, and vertigo. *Id.* The ALJ also noted that the record mentioned fibromyalgia, gastritis, irritable bowel syndrome, headaches, asthma, and chronic obstructive pulmonary disease, but he concluded none of these were severe impairments because they did not "cause more than minimal limitations in the claimant's ability to perform basic work activities." *Id.* at 20. In particular, the ALJ found that Grubbs had not presented evidence of fibromyalgia because she did not have "at least eleven positive tender points on examination and there [was] not sufficient evidence that other disorders ha[d] been excluded"—one way that SSR 12-2p outlines for determining a severe impairment as a result of fibromyalgia.

At step three, the ALJ determined that the claimant did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. The ALJ then determined that Grubbs had the RFC to perform sedentary work, except that she should not balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. *Id.* at 22. The ALJ also found that Grubbs could occasionally climb stairs and ramps; should be permitted to use a cane to walk; and should not work at unprotected heights or around moving mechanical parts of equipment. *Id.* Finally, at step five, the ALJ

found that Grubbs can perform jobs that exist in significant numbers in the national economy, such as information clerk or document preparer. *Id.* at 25-26.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. ALLEGATIONS

Grubbs objects to the ALJ's RFC determination. Docket Item 11-1 at 1. She argues specifically that the ALJ erred by assigning little weight to Dr. Fennelly's opinion and instead relying exclusively on other evidence. *Id.* at 16, 23. Grubbs also argues

that the ALJ failed to evaluate her credibility under the appropriate legal standard.[2]  *Id.* at 27.

## II.     ANALYSIS

When determining a claimant's RFC, the ALJ must evaluate every medical opinion in the record.  20 C.F.R. § 416.927(c).  "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.  'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).  A treating source is an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1527(a)(1).

When a medical opinion from a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the opinion is given controlling weight.  20 C.F.R. § 404.1527(c)(2).  In determining the weight to give to a treating source's medical opinion, the ALJ must consider several factors, including the examining relationship, the extent and nature of the treatment relationship, the length of the treatment relationship, whether the medical opinion is supported by medical signs

---

[2] Because this Court finds that remand is required for one of the reasons Grubbs identifies and her other objections may well be resolved on remand, the Court does not address her remaining arguments.

7

and laboratory findings, the opinion's consistency with the record as a whole, the opinion source's specialization, and other factors the claimant brings to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6). When the ALJ does not rely on these "good reasons" for the weight given to the treating source opinions, remand is required. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion . . . .").

Here, the ALJ gave little weight to Dr. Fennelly's June 2016 medical opinion. Even though Dr. Fennelly cited both chronic leg pain and fibromyalgia as the basis for his opinion, the ALJ considered that opinion to be based "solely on the claimant's right leg impairment" because "the record does not support a finding that fibromyalgia is a severe impairment." Docket Item 8 at 15. For two reasons, the ALJ erred in failing to consider Dr. Fennelly's opinion regarding how fibromyalgia limited Grubbs.

First, the ALJ dismissed Dr. Fennelly's opinion relying on an error at step two that was not cured during later steps of the analysis. *Cf. Reices-Colon v. Astrue*, 523 F.App'x 796, 798 (2d Cir. May 2, 2013) (stating error at step two was harmless because the ALJ considered the effects of all the claimant's impairments through the remainder of the sequential evaluation process). SSR 12-2P provides two different ways to determine whether a claimant has a medically determinable impairment of fibromyalgia. SSR 12-2P, 2010 WL 3104869 (July 25, 2012). The first uses the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia.[3] The

---

[3] A claimant has fibromyalgia based on the 1990 ACR criteria if he or she has a history of widespread pain, at least eleven positive tender points out of 18 identified

8

second uses the 2010 ACR Preliminary Diagnostic Criteria.[4]  Either of these is sufficient to establish the impairment.  *See Selian v. Astrue*, 708 F.3d 409, 419 n.3 (2d Cir. 2013).  Here, the ALJ found that Grubbs did not have a medically determinable impairment of fibromyalgia after considering only the 1990 ACR criteria.  Docket Item 8 at 20.  She did not mention, and apparently did not consider, whether Grubbs had fibromyalgia under the 2010 ACR criteria.  Grubbs certainly had a history of widespread pain, and she may well have had "repeated manifestations of six or more fibromyalgia symptoms," SSR 12-2P, consistent with the 2010 criteria.  But the ALJ did not consider that possibility in her decision.[5]

Second, the ALJ must base the RFC assessment on both severe and nonsevere impairments.  *See* 20 C.F.R. § 404.1545 ("[W]e will consider the limiting effects of all

---

tender point sites, and evidence that other disorders that could cause the symptoms or signs were excluded.  *See* SSR 12-2P.

[4] A claimant has fibromyalgia based on the 2010 ACR criteria if he or she has (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *See* SSR 12-2P.

[5] Although the ALJ did find that other causes of the patient's symptoms under the 1990 criteria had not been excluded, that finding did not address fibromyalgia symptoms under the 2010 criteria.  The ALJ's finding with respect to the 1990 criteria addressed different "symptoms" than those to which the 2010 criteria refer, so the failure even to mention the 2010 criteria clearly was an error that was not cured by the ALJ's analysis under the 1990 criteria.  Moreover, that analysis was based not on a finding in the record but on the absence of an explicit finding.  If there were a gap in the record in this regard, the ALJ was compelled to recontact Dr. Fennelly to fill that gap.  *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.") (internal quotations omitted).

9

your impairment(s), even those that are not severe, in determining your residual functional capacity."). So even though the ALJ found fibromyalgia not to be a "severe" impairment, she nonetheless was required to consider its "limiting effects." *Id.* Indeed, the fact the limitations about which a treating source opines are due to a nonsevere impairment is not a "good reason[]" to discount the opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.") (quoting 20 C.F.R. § 404.1527).

Here, the ALJ may have given good reasons to assign little weight to Dr. Fennelly's opinion about Grubbs's right leg impairment—mainly that other providers had found diagnostic testing to be "fairly benign"—but those good reasons did not address fibromyalgia.[6] Docket Item 8 at 25. Instead, the ALJ dismissed fibromyalgia simply because "the record does not support a finding that fibromyalgia is a severe impairment." *Id.*; *see id.* at 24 (rejecting the claimant's subjective complaints because, inter alia, "fibromyalgia cannot be considered a severe impairment."). But even a nonsevere impairment can have limiting effects that the ALJ must incorporate into the claimant's RFC. *See* 20 C.F.R. § 404.1545.

Moreover, a "fibromyalgia diagnosis is largely based on the patient's subjective reports of pain," *Casselbury v. Colvin*, 90 F.Supp.3d 81, 95 (W.D.N.Y. 2013), and the record is replete with Grubbs's reports of pain, *see, e.g.*, Docket Item 8 at 306-11; 612-

---

[6] The ALJ cited the inconsistency of Dr. Fennelly's opinion with "several opinions in the record that indicate the claimant is capable of at least sedentary work even with her leg issue," "diagnostic testing on the right leg," a "normal" EMG/nerve conduction study, and "full range of motion of the right knee." Docket Item 8 at 25. None of this record evidence contradicts evidence of fibromyalgia, however.

25. In addition to Dr. Fennelly's opinion that Grubbs was severely limited, at least in part due to fibromyalgia, Dr. Kingston also suspected that Grubbs "may have fibromyalgia" in February 2015, *id.* at 635, and then twice diagnosed fibromyalgia as his primary assessment in May and December 2015, *id.* at 630-33.

In light of this record evidence, ignoring fibromyalgia was not harmless error. At the very least, the ALJ should have recontacted Dr. Fennelly for an explanation of why he attributed Grubbs's limitations to fibromyalgia or contacted Dr. Kingston to determine the basis of his diagnosis. What the ALJ could not do was simply discount the opinions of those physicians based on her lay conclusion that fibromyalgia was not a severe impairment. And that is especially true when, as noted above, the ALJ failed to consider both sets of criteria for deciding whether fibromyalgia was a medically-determinable impairment here.

The ALJ must "conduct a distinct analysis that would permit adequate review on appeal." *Aung Winn v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013) (quoting *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008)) (summary order). Because, at step two, the ALJ did not consider both ways in which Grubbs's alleged impairments from fibromyalgia might be severe—and because, at step four, the ALJ did not consider that impairment regardless of whether it was severe—this Court cannot determine whether the ALJ's decision is supported by substantial evidence. The matter is therefore remanded so that the ALJ can address whether Grubbs suffers from a medically-determinable impairment of fibromyalgia under the 2010 ACR criteria; obtain more information about Dr. Fennelly's opinion on fibromyalgia; and analyze Grubbs's RFC in light of any fibromyalgia regardless of whether it is a severe impairment.

11

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Grubbs's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 21, 2019
        Buffalo, New York

                                *s/Lawrence J. Vilardo*
                                LAWRENCE J. VILARDO
                                UNITED STATES DISTRICT JUDGE